**Abdullah E. AL–HARBI, Appellant,**

v.

**CITIBANK, N.A. and Citibank, A.S., Appellees.**

**No. 95–7192.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1996.

Decided June 11, 1996.

---

Herman M. Braude, Washington, DC, argued the cause and filed the briefs, for appellant.

W. Neil Eggleston, Washington, DC, argued the cause, for appellees, with whom Stuart H. Harris was on the brief.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Separate concurring opinion filed by Circuit Judge SILBERMAN.

SENTELLE, Circuit Judge:

Abdullah E. Al–Harbi appeals from the District Court's order denying his prayer to vacate an arbitration award. We hold that the District Court properly applied the narrow standard applicable to review of arbitration awards under the Federal Arbitration Act. We therefore affirm.

## I.

Al–Harbi, a citizen of Saudi Arabia, alleges that Citibank, a.s., a wholly-owned subsidiary of appellee Citibank, N.A., organized under the laws of the Czech republic, either defrauded him or breached a fiduciary duty toward him in a transaction in which he paid $5,985,000 U.S. for a fifty percent interest in real estate in the Czech republic, as a result of which he claims to have stood losses of up to $7.5 million U.S. After months of negotiation, the parties entered into nonbinding mediation before Kenneth R. Feinberg in London, England, on October 6–7, 1994. When it became clear that the nonbinding mediation would not be successful, the parties agreed to a binding arbitration. Though Feinberg recommended several possible arbitrators, in the interest of a speedy resolution, the parties agreed to Feinberg himself conducting the arbitration immediately under a "baseball" format, in which the arbitrator hears both sides' presentations, then chooses one side's number. They further agreed to a

modification of the baseball format to the extent that the arbitrator could add or subtract up to $500,000 to or from the number chosen. Feinberg chose Citibank's number of $600,000 and added $500,000, for a total award to Al–Harbi of $1,100,000.

Al–Harbi, dissatisfied with the award, brought this action in the District Court to vacate the arbitration award. After receiving all proffered submissions from both parties, the District Court entered its order denying Al–Harbi's relief. He brought the present appeal.

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 (1994), empowers a federal court to vacate an arbitration award only

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

■ Courts have also recognized a limited nonstatutory ground for vacating an arbitration award where the arbitrator has acted in "manifest disregard of the law." *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C.Cir.1991) (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953) (dicta)). Although Al–Harbi launched a multi-faceted attack on the arbitration award in District Court, the only proffered grounds for vacatur warranting specific mention here are (1) that the arbitrator exhibited "evident partiality"; and (2) that the arbitrator exhibited "manifest disregard of the law." He has not shown, either in the District Court or on appeal, any adequate basis for vacatur on either of these grounds.

## A.

■ Appellant's "evident partiality" argument is based on the fact that Feinberg's *former* law firm had represented Citibank on matters unrelated to the mediation or the underlying dispute. Appellant emphasizes that Feinberg did not disclose this representation to the parties to the mediation, but it is undisputed that Feinberg did not have knowledge of the representation at the time of the arbitration. Appellant's argument therefore depends on the proposition that Feinberg had a duty to make inquiry as to whether or not his former law firm had ever had any connection with any of the parties to the arbitration and thereafter make disclosure of the results. We can find no source for any such generalized duty.

In support of his contention that such a duty exists, Al–Harbi relies on *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994). In *Schmitz*, the Ninth Circuit reversed a district court's judgment upholding an arbitration award where the arbitrator's law firm had represented a subsidiary of one of the parties in at least nineteen cases over a period of thirty-five years, the most recent having ended approximately twenty-one months before the arbitration. The *Schmitz* court stated that "an arbitrator may have a duty to investigate independent of its ... duty to disclose," and further observed that "[a] violation of this independent duty to investigate may result in a failure to disclose that creates a reasonable impression of partiality." 20 F.3d at 1048.

We of course are not bound by the Ninth Circuit's decision, and in any event, find it distinguishable both on its facts and the applicable law. In *Schmitz*, the arbitrator was conducting the proceedings under the National Association of Securities Dealers ("NASD") code, which required him "to make such an investigation regarding the actual parties to th[e] arbitration." *Id.* In the present case, not only does the NASD code not apply, but the alleged evident partiality arises not from a representation by any firm

with which the arbitrator was connected at the time of the arbitration, but from representation in unrelated matters by a firm with which his only continuing connection was, concededly, an interest in receivables, none of which were generated by any party connected with the arbitration. Thus, even if *Schmitz* were our own decision, it would not answer the question before us today.

Only our decisions and those of the Supreme Court bind us as precedent, and neither we nor the highest court have yet considered whether a duty of investigation underlies the arbitrator's duty to disclose facts that "might create an impression of possible bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149, 89 S.Ct. 337, 339–40, 21 L.Ed.2d 301 (1968). Lacking binding precedent, the District Court in the present case relied heavily on an earlier opinion by another district judge in this circuit. *Overseas Private Inv. Corp. v. Anaconda Co.*, 418 F.Supp. 107 (D.D.C.1976) (*"OPIC"*). In *OPIC*, Judge Flannery held that where no reasonable person could find the arbitrator "to have known any potentially prejudicial information" prior to the award, there was no basis for a conclusion of evident partiality and he affirmed the arbitration award. *Id.* at 112.

The Fourth Circuit considered the duty of disclosure issue on facts more analogous to those before us than were those in the Ninth Circuit's decision. In *Peoples Security Life Insurance Company v. Monumental Life Insurance Company*, 991 F.2d 141 (4th Cir. 1993), that court reached the same conclusion as Judge Flannery in *OPIC*. In the *Peoples Security* case, the arbitrator worked in the Newark, New Jersey, and New York, New York, offices of the LeBoeuf law firm. 991 F.2d at 143. An attorney named James Nolan joined the Washington office of the same firm in May of 1990. He had signed an initial complaint on behalf of one of the parties to the arbitration under review in *Peoples Security* at a time while he was a partner in a different law firm. 991 F.2d at 145.

The final portion of the arbitration occurred after Nolan joined the LeBoeuf firm. *Id.*

■ While not specifically addressing whether the arbitrator's duty to disclose incorporates the duty of investigation advanced by appellant here, in reasoning applicable to the instant case, the Fourth Circuit held that "[t]he party asserting evident partiality has the burden of proof." 991 F.2d at 146. The circuit further iterated, "The alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain, or speculative.'" *Id.* (quoting *Health Serv. Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992)). We agree with the Fourth Circuit that "the burden on a claimant for vacation of an arbitration award due to 'evident partiality' is heavy, and the claimant must establish specific facts that indicate improper motives on the part of an arbitrator." 991 F.2d at 146. In light of this onerous standard for vacatur, we affirm the District Court's refusal to vacate the arbitration award, and as did the District Court in the present case and in *OPIC*, we hold that, nothing else appearing, the fact that an arbitrator has not conducted an investigation sufficient to uncover the existence of facts marginally disclosable under the *Commonwealth Coatings* duty is not sufficient to warrant vacating an arbitration award for evident partiality. That is, we explicitly hold that there is no duty on an arbitrator to make any such investigation.

### B.

■ Appellant's argument that the District Court should have vacated the arbitration award on the non-statutory ground that the arbitrator demonstrated "manifest disregard" of the applicable law is totally meritless. This basis for vacatur traces its lineage to language in *Wilko v. Swan*, 346 U.S. at 436–37, 74 S.Ct. at 187–88,[1] stating that "interpretations of the law by the arbitrators in contrast to *manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436–37, 74 S.Ct. at 187 (emphasis added). Plain-

---

1. Although the holding in *Wilko* was overruled by *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the dicta that constitutes the core of appellant's argument was unaffected by the grounds of the overruling.

ly, this non-statutory theory of vacatur cannot empower a District Court to conduct the same *de novo* review of questions of law that an appellate court exercises over lower court decisions. Indeed, we have in the past held that "it is clear that [manifest disregard] means more than error or misunderstanding with respect to the law." *Kanuth*, 949 F.2d at 1178. What appellant styles as "manifest disregard" in the present case does not readily appear even erroneous.

The submission agreement under which the arbitrator decided the controversy mandated that the arbitrator would apply "the procedural and substantive laws of the Southern District of New York, U.S.A." The arbitrator ruled that jurisdiction would be difficult to establish in New York, but even assuming that it could be established, "this case would be dismissed on the ground of *forum non conveniens*." Arbitration Memorandum at 10. The crux of appellant's argument is not that the arbitrator disregarded New York law in determining that a New York court would dismiss on *forum non conveniens*, but only that *forum non conveniens* is procedural law and that the arbitrator was obligated to apply "the procedural *and substantive* law of New York (not '*or* substantive law')." Appellant's Brief at 25. Appellant's argument then depends upon the proposition that where a tribunal is to render decision based on "procedural and substantive law" that tribunal has not only erred, but acted in manifest disregard of the law if it finds that procedural factors are dispositive of the case without then going on to consider substantive law rendered apparently moot by that procedural decision. To state that proposition is to reject it. We find no basis for vacatur.

### Conclusion

For the reasons set forth above, we affirm the order of the District Court denying vacatur of the arbitration award.

SILBERMAN, Circuit Judge, concurring:

I concur in the panel's opinion. I do not think an arbitrator has a duty—at least absent governing rules such as the NASD provision applied in *Schmitz*—to search his former law firm's client list to determine whether one of the parties before him had been a client of his former law firm. We should bear in mind that arbitrators, unlike judges, are chosen by the parties, and any extensive duty to investigate the client list of former law firms, or even perhaps a very large present law firm, will just increase the costs. Of course, the parties can request such a search, but that is a different matter. I do not think, however, that the absence of any particular duty can be explained—as does the Fourth Circuit in *Peoples Security*—in terms of the burden of proof on the party seeking to overturn the award. Obviously, if a duty to investigate existed, the burden of proof would have been met by establishing that the arbitrator failed to perform it.