*908
 

 MEMORANDUM
 

 JUNE L. GREEN, District Judge.
 

 I. Introduction
 

 This matter is before the Court on the Petition of Chromailoy Aeroservices, Inc., (“CAS”) to Confirm an Arbitral Award, and a Motion to Dismiss that Petition filed by the Arab Republic of Egypt (“Egypt”), the defendant in the arbitration. This is a case of first impression. The Court GRANTS Chromailoy Aeroservices’ Petition to Recognize and Enforce the Arbitral Award, and DENIES Egypt’s Motion to Dismiss, because the arbitral award in question is valid, and because Egypt’s arguments against enforcement are insufficient to allow this Court to disturb the award.
 

 II. Background
 

 This case involves a military procurement contract between a U.S. corporation, Chromailoy Aeroservices, Inc., and the Air Force of the Arab Republic of Egypt.
 

 On June 16, 1988, Egypt and CAS entered into a contract under which CAS agreed to provide parts, maintenance, and repair for helicopters belonging to the Egyptian Air Force. (Arbitration Award (“Award”) at 3.) On December 2, 1991, Egypt terminated the contract by notifying CAS representatives in Egypt. (Award at 5.) On December 4,1991, Egypt notified CAS headquarters in Texas of the termination.
 
 (Id.)
 
 On December 15, 1991, CAS notified Egypt that it rejected the cancellation of the contract “and commenced arbitration proceedings on the basis of the arbitration clause contained in Article XII and Appendix E of the Contract.”
 
 (Id)
 
 Egypt then drew down CAS’ letters of guarantee in an amount totaling some $11,475,-968.
 
 (Id.)
 

 On February 23, 1992, the parties began appointing arbitrators, and shortly thereafter, commenced a lengthy arbitration.
 
 (Id.)
 
 On August 24, 1994, the arbitral panel ordered Egypt to pay to CAS the sums of $272,900 plus 5 percent interest from July 15, 1991, (interest accruing until the date of payment), and $16,940,958 plus 5 percent interest from December 15, 1991, (interest accruing until the date of payment).
 
 (Id.
 
 at 65-66.) The panel also ordered CAS to pay to Egypt the sum of 606,920 pounds sterling, plus 5 percent interest from December 15, 1991, (interest accruing until the date of payment).
 
 (Id.)
 

 On October 28, 1994, CAS applied to this Court for enforcement of the award. On November 13, 1994, Egypt filed an appeal with the Egyptian Court of Appeal, seeking nullification of the award. On March 1,1995, Egypt filed a motion with this Court to adjourn CAS’s Petition to enforce the award. On April 4, 1995, the Egyptian Court of Appeal suspended the award, and on May 5, 1995, Egypt filed a Motion in this Court to Dismiss CAS’s petition to enforce the award. On December 5, 1995, Egypt’s Court of Appeal at Cairo issued an order nullifying the award. (Decision of Egyptian Court of Appeal (“Egypt Ct.”) at 11.) This Court held a hearing in the matter on December 12, 1995.
 

 Egypt argues that this Court should deny CAS’ Petition to Recognize and Enforce the Arbitral Award out of deference to its court. (Response to Petitioner’s Post-Hearing Brief at 2.) CAS argues that this Court should confirm the award because Egypt “does not present any serious argument that its court’s nullification decision is consistent with the New York Convention or United States arbitration law.” (Petitioner’s Rejoinder at 1.)
 

 III. Discussion
 

 A. Jurisdiction
 

 This Court has original jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330,
 
 et. seq.
 
 (1976), which provides in relevant part that:
 

 The district courts shall have original jurisdiction without regard to amount in controversy of any non-jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity ... under sections 1605-1607 of this title.
 

 28 U.S.C. § 1330(a). Both the Arab Republic of Egypt and the Egyptian Air Force are foreign states under 28 U.S.C. § 1603(a) & (b).
 
 See Republic of Argentina v. Weltover,
 
 
 *909
 
 504 U.S. 607, 612, n. 1, 112 S.Ct. 2160, 2164-65, n. 1, 119 L.Ed.2d 394 (1992).
 

 (а)
 
 A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any
 
 case—
 

 ******
 

 (б)
 
 in which the action is brought,
 
 either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or
 
 to confirm an award made pursuant to suck an agreement,
 
 if
 

 ******
 

 (B)
 
 the agreement or award is
 
 ...
 
 governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.
 

 28 U.S.C. § 1605(a) & (a)(6) & (a)(6)(B) (emphasis added).
 

 CAS brings this action to confirm an arbitral award made pursuant to an agreement to arbitrate any and all disputes arising under a contract between itself and Egypt, a foreign state, concerning a subject matter capable of settlement by arbitration under U.S. law.
 
 See
 
 9 U.S.C. §§ 1-14. Enforcement of the award falls under the Convention on Recognition and Enforcement of Foreign Arbitral Awards, (“Convention”), 9 U.S.C. § 202, which grants “[t]he district courts of the United States ... original jurisdiction over such an action or proceeding, regardless of the amount in controversy.” 9 U.S.C. § 203.
 
 [1]
 

 B. Chromalloy’s Petition for Enforcement
 

 A party seeking enforcement of a foreign arbitral award must apply for an order eon-firming the award within three years after the award is made. 9 U.S.C. § 207. The award in question was made on August 14, 1994. CAS filed a Petition to confirm the award with this Court on October 28, 1994, less than three months after the arbitral panel made the award. CAS’s Petition includes a “duly certified copy” of the original award as required by Article IV(l)(a) of the Convention, translated by a duly sworn translator, as required by Article IV(2) of the Convention, as well as a duly certified copy of the original contract and arbitration clause, as required by Article IV(l)(b) of the Convention. 9 U.S.C. § 201 note. CAS’s Petition is properly before this Court.
 

 1. The Standard under the Convention
 

 This Court
 
 must
 
 grant CAS’s Petition to Recognize and Enforce the arbitral “award unless it finds one of the grounds for refusal ... of recognition or enforcement of the award specified in the ... Convention.” 9 U.S.C. § 207. Under the Convention, “Recognition and enforcement of the award
 
 may
 
 be refused” if Egypt furnishes to this Court “proof that ... [t]he award has ... been set aside ... by a competent authority of the country in which, or under the law of which, that award was made.” Convention, Article V(l) & V(l)(e) (emphasis added), 9 U.S.C. § 201 note. In the present case, the award was made in Egypt, under the laws of Egypt, and has been nullified by the court designated by Egypt to review arbitral awards. Thus, the Court
 
 may,
 
 at its discretion, decline to enforce the award.
 
 [2]
 

 While Article V provides a discretionary standard, Article VII of the Convention
 
 requires
 
 that, “The provisions of the present Convention
 
 shall not ...
 
 deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law ... of the count[r]y where such award is sought to be relied upon.” 9 U.S.C. § 201 note (em
 
 *910
 
 phasis added). In other words, under the Convention, CAS maintains all rights to the enforcement of this Arbitral Award that it would have in the absence of the Convention. Accordingly, the Court finds that, if the Convention did not exist, the Federal Arbitration Act (“FAA”) would provide CAS with a legitimate claim to enforcement of this arbitral award.
 
 See
 
 9 U.S.C. §§ 1-14. Jurisdiction over Egypt in such a suit would be available under 28 U.S.C. §§ 1330 (granting jurisdiction over foreign states “as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity ... under sections 1605-1607 of this title”) and 1605(a)(2) (withholding immunity of foreign states for “an act outside ... the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States”).
 
 See Weltover,
 
 504 U.S. at 607, 112 S.Ct. at 2160. Venue for the action would lie with this Court under 28 U.S.C. § 1391(f) & (f)(4) (granting venue in civil cases against foreign governments to the United States District Court for the District of Columbia).
 

 2. Examination of the Award under 9 U.S.C. § 10
 

 Under the laws of the United States, arbitration awards are presumed to be binding, and may only be vacated by a court under very limited circumstances:
 

 (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
 

 (1) Where the award was procured by corruption, fraud, or undue means.
 

 (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
 

 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 

 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 

 9 U.S.C. § 10.
 
 [3]
 

 An arbitral award will also be set aside if the award was made in “ ‘manifest disregard’ of the law.”
 
 First Options of Chicago v. Kaplan,
 
 — U.S. -, -, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). “Manifest disregard of the law may be found if [the] arbitratorfs] understood and correctly stated the law but proceeded to ignore it.”
 
 Kanuth v. Prescott, Ball, & Turben, Inc.,
 
 949 F.2d 1175, 1179 (D.C.Cir.1991).
 

 Plainly, this non-statutory theory of vacatur cannot empower a District Court to conduct the same de novo review of questions of law that an appellate court exercises over lower court decisions. Indeed, we have in the past held that it is clear that [manifest disregard] means more than error or misunderstanding with respect to the law.
 

 Al-Harbi v. Citibank,
 
 85 F.3d 680, 683 (D.C.Cir.1996) (internal citations omitted).
 

 In
 
 Al-Harbi,
 
 “The submission agreement under which the arbitrator decided the controversy mandated that the arbitrator apply ‘the procedural and substantive laws of the Southern District of New York, U.S.A.’ ”
 
 Id.
 
 at 684. The arbitrator in
 
 Al-Harbi
 
 ruled that a court applying the laws of New York would dismiss the case on
 
 forum non conveniens
 
 grounds.
 
 Id.
 
 Appellant argued on appeal that the arbitrator had manifestly disregarded the substantive laws of New York by disposing of the case on procedural grounds.
 
 Id.
 
 The D.C. Circuit emphatically rejected this argument, stating that:
 

 Appellant’s argument then depends upon the proposition that where a tribunal is to render [a] decision based on procedural and substantive law that tribunal has not only erred, but acted in manifest disregard of the law if it finds that procedural factors are dispositive of the ease without then
 
 *911
 
 going on to consider substantive law rendered apparently moot by that procedural decision. To state that proposition is to reject it. We find no basis for vacatur.
 

 Id.
 

 In the present case, the language of the arbitral award that Egypt complains of reads:
 

 The Arbitral tribunal considers that it does not need to decide the legal nature of the contract. It appears that the Parties rely principally for their claims and defences, on the interpretation of the contract itself and on the facts presented. Furthermore, the Arbitral tribunal holds that the legal issues in dispute are not affected by the characterization of the contract.
 

 {Award
 
 at 30.)
 

 Like the arbitrator in
 
 Ah-Harbi,
 
 the arbitrators in the present case made a procedural decision that allegedly led to a misapplication of substantive law. After considering Egypt’s arguments that Egyptian administrative law should
 
 govern
 
 the contract, the majority of the arbitral panel held that it did not matter which substantive law they applied — civil or administrative.
 
 Id.
 
 At worst, this decision constitutes a mistake of law, and thus is not subject to review by this Court.
 
 See Al-Harbi,
 
 85 F.3d at 684.
 

 In the United States, “[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.”
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 
 473 U.S. 614, 626-27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). In Egypt, however, “[I]t is established that arbitration is an exceptional means for resolving disputes, requiring departure from the normal means of litigation before the courts, and the guarantees they afford.” (Nullification Decision at 8.) Egypt’s complaint that, “[T]he Arbitral Award is null under Arbitration Law, ... because it is not properly ‘grounded’ under Egyptian law,” reflects this suspicious view of arbitration, and is precisely the type of technical argument that U.S. courts are not to entertain when reviewing an arbitral award.
 
 See Montana Power Company v. Federal Power Commission,
 
 445 F.2d 739, 755 (D.C.Cir.1970)
 
 (cert. den.
 
 400 U.S. 1013, 91 S.Ct. 566, 27 L.Ed.2d 627 (1971)) (holding that, “Arbitrators do not have to give reasons”) (ci
 
 ting United Steelworkers v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 598, 80 S.Ct. 1358, 1361-62, 4 L.Ed.2d 1424 (I960)).
 

 The Court’s analysis thus far has addressed the arbitral award, and, as a matter of U.S. law, the award is proper.
 
 See Sanders v. Washington Metro. Area Transit Auth.,
 
 819 F.2d 1151, 1157 (D.C.Cir.1987) (holding that, “When the parties have had a full and fair opportunity to present their evidence, the decisions of the arbitrator should be viewed as conclusive as to subsequent proceedings, absent some abuse of discretion by the arbitrator”)
 
 {citing
 
 the Restatement (Second) of Judgments § 84(3) (1982),
 
 Greenblatt v. Drexel Burnham Lambert, Inc.,
 
 763 F.2d 1352 (11th Cir.1985)). The Court now considers the question of whether the decision of the Egyptian court should be recognized as a valid foreign judgment.
 

 As the Court stated earlier, this is a case of first impression. There are no reported cases in which a court of the United States has faced a situation, under the Convention, in which the court of a foreign nation has nullified an otherwise valid arbitral award. This does not mean, however, that the Court is without guidance in this case. To the contrary, more than twenty years ago, in a ease involving the enforcement of an arbitration clause under the FAA, the Supreme Court held that:
 

 An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause---- The invalidation of such an agreement ... would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a parochial concept that all disputes must be resolved under our laws and in our courts.
 

 Scherk v. Alberto-Culver Co.,
 
 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974)
 
 (reh. den.,
 
 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974)) (citations omitted).
 

 
 *912
 
 In
 
 Scherk,
 
 the Court forced a U.S. corporation to arbitrate a dispute arising under an international contract containing an arbitration clause.
 
 Id.
 
 417 U.S. at 518, 94 S.Ct. at 2456-57. In so doing, the Court relied upon the FAA, but took the opportunity to comment upon the purposes of the newly acceded-to Convention:
 

 The delegates to the Convention voiced frequent concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the basis of parochial views of their desirability or in a manner that would diminish the mutually binding nature of the agreements____ [W]e think that this country’s adoption and ratification of the Convention and the passage of Chapter 2 of the United States Arbitration Act provide strongly persuasive evidence of congressional policy consistent with the decision we reach today.
 

 Id.
 
 at n. 15. The Court finds this argument equally persuasive in the present case, where Egypt seeks to repudiate its solemn promise to abide by the results of the arbitration.
 
 [4]
 

 C. The Decision of Egypt’s Court of Appeal
 

 1. The Contract
 

 “The arbitration agreement is a contract and the court will not rewrite it for the parties.”
 
 Williams v. E.F. Hutton & Co., Inc.,
 
 753 F.2d 117, 119 (D.C.Cir.1985)
 
 (citing Davis v. Chevy Chase Financial Ltd.,
 
 667 F.2d 160, 167 (D.C.Cir.1981)). The Court “begin[s] with the ‘cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent -with each other.’ ”
 
 United States v. Insurance Co. of North America,
 
 83 F.3d 1507, 1511 (D.C.Cir.1996)
 
 (iquoting Mastrobuono v. Shearson Lehman Hutton, Inc.,
 
 — U.S. -, -, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995)). Article XII of the contract requires that the parties arbitrate all disputes that arise between them under the contract. Appendix E, which defines the terms of any arbitration, forms an integral part of the contract. The contract is unitary. Appendix E to the contract defines the “Applicable Law Court of Arbitration.” The clause reads, in relevant part:
 

 It is ... understood that both parties have irrevocably agreed to apply Egypt (sic) Laws and to choose Cairo as seat of the court of arbitration.
 

 ‡ ^ # # * ‡
 

 The decision of the said court shall be final and binding and cannot be made subject to any appeal or other recourse.
 

 (Appendix E (“Appendix”) to the Contract.)
 

 This Court may not assume that the parties intended these two sentences to contradict one another, and must preserve the meaning of both if possible.
 
 Insurance Co.,
 
 83 F.3d 1507, 1511 (D.C.Cir.1996). Egypt argues that the first quoted sentence supersedes the second, and allows an appeal to an Egyptian court. Such an interpretation, however, would vitiate the second sentence, and would ignore the plain language on the face of the contract. The Court concludes that the first sentence defines choice of law and choice of forum for the hearings of the arbitral panel. The Court further- concludes that the second quoted sentence indicates the clear intent of the parties that any arbitration of a dispute arising under the contract is not to be appealed to any court. This interpretation, unlike that offered by Egypt, preserves the meaning of both sentences in a manner that is consistent with the plain language of the contract. The position of the latter sentence as the seventh and final paragraph, just before the signatures, lends credence to the view that this sentence is the final word on the arbitration question. In other words, the parties agreed to apply Egyptian Law to the arbitration, but, more important, they agreed that the arbitration ends with the decision of the arbitral panel.
 

 
 *913
 
 2. The Decision of the Egyptian Court of Appeal
 

 The Court has already found that the arbitral award is proper as a matter of U.S. law, and that the arbitration agreement between Egypt and CAS precluded an appeal in Egyptian courts. The Egyptian court has acted, however, and Egypt asks this Court to grant
 
 res judicata
 
 effect to that action.
 

 The “requirements for enforcement of a foreign judgment ... are that there be ‘due citation’
 
 [i.e.,
 
 proper service of process] and that the original claim not violate U.S. public policy.”
 
 Tahan v. Hodgson,
 
 662 F.2d 862, 864 (D.C.Cir.1981)
 
 (citing Hilton v. Guyot,
 
 159 U.S. 113, 202, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895)). The Court uses the term ‘public policy’ advisedly, with a full understanding that, “[J]udges have no license to impose their own brand of justice in determining applicable public policy.”
 
 Northwest Airlines Inc. v. Air Line Pilots Association, Int'l
 
 808 F.2d 76, 78 (D.C.Cir.1987). Correctly understood, “[PJublic policy emanates [only] from clear statutory or ease law, ‘not from general considerations of supposed public interest.’ ”
 
 Id. (quoting American Postal Workers Union v. United States Postal Service,
 
 789 F.2d 1 (D.C.Cir.1986)).
 

 The U.S. public policy in favor of final and binding arbitration of commercial disputes is unmistakable, and supported by treaty, by statute, and by ease law. The Federal Arbitration Act “and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act,” demonstrate that there is an “emphatic federal policy in favor of arbitral dispute resolution,” particularly “in the field of international commerce.”
 
 Mitsubishi v. Soler Chrysler-Plymouth,
 
 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985) (internal citation omitted);
 
 cf. Revere Copper & Brass Inc., v. Overseas Private Investment Corporation,
 
 628 F.2d 81, 82 (D.C.Cir.1980) (holding that, “There is a strong public policy behind judicial enforcement of binding arbitration clauses”). A decision by this Court to recognize the decision of the Egyptian court would violate this clear U.S. public policy.
 

 3. International Comity
 

 “No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum.”
 
 Laker Airways Ltd. v. Sabena, Belgian World Airlines,
 
 731 F.2d 909, 937 (D.C.Cir.1984). “[C]omity
 
 never
 
 obligates a national forum to ignore ‘the rights of its own citizens or of other persons who are under the protection of its laws.’ ”
 
 Id.
 
 at 942 (emphasis added) (quoting
 
 Hilton v. Guyot,
 
 159 U.S. 113, 164, 16 S.Ct. 139, 143-44, 40 L.Ed. 95 (1895). Egypt alleges that, “Comity is the chief doctrine of international law
 
 requiring
 
 U.S. courts to respect the decisions of competent foreign tribunals.” However, comity does not and may not have the preclusive effect upon U.S. law that Egypt wishes this Court to create for it.
 

 The Supreme Court’s unanimous opinion in
 
 W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l
 
 493 U.S. 400, 408, 110 S.Ct. 701, 706, 107 L.Ed.2d 816 (1990), defines the proper limitations of the “act of state doctrine”
 
 [5]
 
 and, by implication, judicial comity as well.
 
 Kirkpatrick
 
 arose out of a dispute between two U.S. companies over a government construction project in Nigeria. Kirkpatrick, the losing bidder, sued Environmental Techtonics, (“ETC”), the winning bidder, alleging that ETC acquired the contract by bribing Nigerian officials in violation of U.S. law.
 
 Id.
 
 ETC argued that the act of state doctrine precluded U.S. courts from hearing the case because to do so “would impugn or question the nobility of a foreign nation’s motivations,” and would “result in embarrassment to the sovereign or constitute interference in the conduct of [the] foreign policy of the United States.”
 
 Id.
 
 at 408, 110 S.Ct. at 706. The Supreme Court rejected this argument:
 

 
 *914
 
 The short of the matter is this: Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them. The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.
 
 That doctrine has no application to the present case because the validity of no foreign sovereign act is at issue.
 

 Id.
 
 at 409,110 S.Ct. at 707 (emphasis added). Similarly, in the present case, the question is whether this Court should give
 
 res judicata
 
 effect to the decision of the Egyptian Court of Appeal, not whether that court properly decided the matter under Egyptian law.
 
 [6]
 
 Since the “act of state doctrine,” as a whole, does not require U.S. courts to defer to a foreign sovereign on these facts, comity, which is but one of several “policies” that underlie the act of state “doctrine,”
 
 id.
 
 at 409, 110 S.Ct. at 706-07, does not require such deference either.
 

 4. Choice of Law
 

 Egypt argues that by choosing Egyptian law, and by choosing Cairo as the sight of the arbitration, CAS has for all time signed away its rights under the Convention and U.S. law. This argument is specious. When CAS agreed to the choice of law and choice of forum provisions, it waived its right to sue Egypt for breach of contract in the courts of the United States in favor of final and binding arbitration of such a dispute under the Convention. Having prevailed in the chosen forum, under the chosen law, CAS comes to this Court seeking recognition and enforcement of the award. The Convention was created for just this purpose. It is untenable to argue that by choosing arbitration under the Convention, CAS has waived rights specifically guaranteed by that same Convention.
 

 5. Conflict between the Convention & the FAA
 

 As a final matter, Egypt argues that, “Chromalloy’s use of [Ajrticle VII [to invoke the Federal Arbitration Act] contradicts the clear language of the Convention and would create an impermissible conflict under 9 U.S.C. § 208,” by eliminating all consideration of Article V of the Convention.
 
 See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,
 
 - U.S. ——, -, 115 S.Ct. 2322, 2325, 132 L.Ed.2d 462 (1995) (holding that, “[W]hen two statutes are capable of coexistence ... it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective”). As the Court has explained, however, Article V provides a permissive standard, under which this Court
 
 may
 
 refuse to enforce an award. Article VII, on the other hand, mandates that this Court
 
 must
 
 consider CAS’ claims under applicable U.S. law.
 

 Article VII of the Convention provides that:
 

 The provisions of the present Convention shall not ... deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law ... of the eount[r]y where such award is sought to be relied upon.
 

 9 U.S.C. § 201 note. Article VII does not eliminate all consideration of Article V; it merely requires that this Court protect any rights that CAS has under the domestic laws of the United States. There is no conflict between CAS’ use of Article VII to invoke the FAA and the language of the Convention.
 

 IV. Conclusion
 

 The Court concludes that the award of the arbitral panel is valid as a matter of U.S. law. The Court further concludes that it need not grant
 
 res judicata
 
 effect to the decision of the Egyptian Court of Appeal at Cairo. Accordingly, the Court GRANTS Chromalloy Aeroservices’ Petition to Recognize and En
 
 *915
 
 force the Arbitral Award, and DENIES Egypt’s Motion to Dismiss that Petition.
 

 [1]
 

 . Having established jurisdiction under 28 U.S.C. § 1605(a)(6)(B), the Court does not consider CAS’ other claims to jurisdiction.
 

 [2]
 

 .
 
 The French language version of the Convention, (which the Court notes is
 
 not
 
 the version codified by Congress), emphasizes the extraordinary nature of a refusal to recognize an award: "Recognition and enforcement of the award
 
 will not be refused ...
 
 unless____” (Response to Petitioner's Post-Hearing Brief, at 3) (emphasis in the original).
 

 [3]
 

 . The Court has reviewed the voluminous submissions of the parties and finds no evidence that corruption, fraud, or undue means was used in procuring the award, or that the arbitrators exceeded their powers in any way.
 

 [4]
 

 . The fact that this case concerns the enforcement of an arbitral
 
 award,
 
 rather than the enforcement of an agreement to arbitrate, makes no difference, because without the knowledge that judgment will be entered upon an award, the term "binding arbitration” becomes meaningless.
 

 [5]
 

 .
 
 See Kirkpatrick,
 
 493 U.S. at 400, 110 S.Ct. at 701-02. "The act of state doctrine ... requires that ... the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid.”
 
 Id.
 
 at 410, 110 S.Ct. at 707. The act of state doctrine is based upon notions of "intemational comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations.”
 
 Id.
 
 at 409, 110 S.Ct. at 706.
 

 [6]
 

 . Indeed, the Court assumes that the decision of the Court of Appeal at Cairo is proper under applicable Egyptian law.