**Linda E. LaPRADE, Plaintiff,**

v.

**KIDDER, PEABODY & CO., INC., Defendant.**

Civil Action Nos. 91–3330 (EGS), [74–1] [74–2] [74–3] [76–1] [76–2].

United States District Court, District of Columbia.

Feb. 29, 2000.

---

John C. LaPrade, LaPrade, & Associates, Washington, DC, Blaine Howell Bortnick, Liddle & Robinson, L.L.P., New York City, for Linda E. LaPrade.

Linda E. LaPrade, Bethesda, MD, pro se.

Anthony Craig Roth, Kathy Butler Houlihan, Morgan, Lewis & Bockius, L.L.P., Washington, DC, Robert A.W. Boraks, Garvey, Schubert & Barer, Washington, DC, Andrew J. Schaffran, Morgan, Lewis & Bockius, New York City (pro hac vice), for Kidder Peabody & Co., Inc.

### MEMORANDUM OPINION

SULLIVAN, District Judge.

This case comes before the Court for consideration of defendant's motion to lift

the stay, confirm the arbitration award, and enter judgment, and plaintiff's cross motion to confirm the arbitration award in part, and to vacate the award in part, and to enter judgment. After consideration of the parties' cross motions, the memoranda and materials in support, the responses in opposition, and the replies in support, and for the following reasons, defendant's motion is **GRANTED**, and plaintiff's motion is **DENIED**.

## I. Factual Background

Plaintiff Linda LaPrade filed suit against defendant Kidder Peabody alleging gender discrimination in employment. Per an earlier agreement between the parties, and upon defendant's motion, the court stayed LaPrade's civil action pending arbitration on June 24, 1992.[1] Arbitration hearings commenced in September 1993.

On October 8, 1999, after six years, the National Association of Securities Dealers ("NASD") Arbitration Panel ("the Panel") rendered its decision dismissing plaintiff's statutory discrimination claims, as well as her defamation claims, in their entirety. The Panel further ordered that defendant pay plaintiff $65,000 inclusive of interest, that plaintiff pay 12% of the NASD forum fees assessed, or $8,376, and that defendant pay 88% of the forum fees, or $61,424. Finally, the panel ordered that each party pay its own attorneys' fees and costs.

## II. Procedure

On October 9, 1999, defendant filed a motion to lift the stay, to confirm the arbitration award, and to enter judgment. Plaintiff filed a cross motion to confirm and vacate different parts of the arbitration award, and to enter judgment, as well as a motion in opposition to defendant's motion to confirm the arbitration award. Plaintiff's cross motion opposes Kidder Peabody's motion only in so far as it seeks to confirm that part of the award that requires plaintiff to pay $8,376 in arbitra-

tion fees. Thereafter, replies were filed by the parties.

## III. Discussion

### A. *Jurisdiction*

█ A federal court may lift a stay of proceedings to confirm an arbitration award. *See Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C.Cir. 1991) (district court lifted stay of diversity action to confirm arbitration award and order entry of judgment). Moreover, this Court stayed this case pending arbitration and retained jurisdiction for purposes of any appropriate proceedings upon completion of arbitration. *See LaPrade v. Kidder, Peabody & Co.*, 146 F.3d 899, 903 (D.C.Cir.1998), cert. den., 525 U.S. 1071, 119 S.Ct. 804, 142 L.Ed.2d 664 (1999) (holding that court that stays civil action pending arbitration retains jurisdiction to confirm arbitration award). Further, pursuant to the NASD Code of Arbitration Procedure § 10330(a), the parties in this case agreed that any arbitration award could be entered as a judgment in a court of competent jurisdiction. Thus, this Court properly retained jurisdiction.

### B. *Standard of Review for Arbitration Awards*

█ Generally, public policy favors leaving arbitration awards untouched. *See Wall Street Associates, L.P. v. Becker Paribas, Inc.*, 818 F.Supp. 679, 682 (S.D.N.Y. 1993) (citing *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). In addition, a court must confirm an arbitration award where some colorable support for the award can be gleaned from the record. *See Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C.Cir.1989). Arbitration awards are subject to "very limited review" to avoid undermining the goals of arbitration,

---

1. On or about October 25, 1991, plaintiff executed a Uniform Application for Securities Industry Registration or Transfer (Form U–4). Paragraph 5 of the Form U–4 required plaintiff to submit any claims arising from her employment to binding arbitration under the rules of the National Association of Securities Dealers ("NASD").

namely, settling disputes efficiently and avoiding lengthy and expensive litigation. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997). Accordingly, reviewing courts have broad latitude to confirm arbitration awards.

Concomitantly, the grounds for disturbing arbitral awards are very narrow. The standard of review for arbitration awards is articulated in the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1–14 (West 1990). Under the FAA, a court must grant a request for confirmation unless the award is "vacated, modified, or corrected." 9 U.S.C. § 9 (West 1990). In addition, the FAA, empowers a federal court to vacate an arbitration award

(1) where the award was procured by corruption, fraud, or undue means.

(2) where there was evident partiality or corruption in the arbitrators, or either of them.

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10.

Moreover, "[c]ourts have also recognized a limited nonstatutory ground for vacating an arbitration award where the arbitrator has acted in 'manifest disregard of the law.'" *In the Matter of Baird*, 939 F.Supp. 15, 16 (D.D.C.1996) (citing *Al–Harbi v. Citibank*, 85 F.3d 680, 682 (D.C.Cir.1996)) (citing *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178

(D.C.Cir.1991)) (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953) (dicta)); *cf. First Options of Chicago v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (holding that an arbitration award will be set aside only if the award was made in . . . "'manifest disregard' of the law").[2]

■ Predictably, "manifest disregard" is a very high standard of review. The United States Court of Appeals for the District of Columbia has explained that "manifest disregard of the law may be found if [the] arbitrator[s] understood and correctly stated the law but proceeded to ignore it." *Kanuth*, 949 F.2d at 1179. The implicit assumption in this test is that "the law" that the arbitrators ignored is clear and unambiguous. In its "manifest disregard" test, the Second Circuit has explicitly added that implicit assumption: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997), cert. den., 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998).[3] The burden falls on the party seeking to alter the arbitration award—here, plaintiff—to "establish that the arbitrators appreciated the existence of a governing legal principle but expressly decided to ignore it." *Johnston Lemon & Co., Inc., v. Smith*, 886 F.Supp. 54, 56 (D.D.C. 1995) (citing *Kanuth*, 949 F.2d at 1182).

■ The contours of the manifest disregard standard are nebulous. It is clear that this standard does not authorize a district court to "conduct the same de novo review of questions of law that an appellate court exercises over lower court decisions." *In the Matter of Baird*, 939

---

2. For discussion and criticism of the "manifest disregard" standard, see Note, "Vacatur of Commercial Arbitration Awards in Federal Court: Contemplating the Use and Utility of the 'Manifest Disregard' of the Law Standard," 27 Ind.L.Rev. 241, 251–54 (1993).

3. The Sixth Circuit concurs. In Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132 (6th Cir.1996), the court held: "[a]n arbitration panel only acts in manifest disregard of the law if the applicable legal principle is clear and well-settled and it refuses to follow that legal principle." *Id.* at 136.

F.Supp. 15, 17 (D.D.C.1996) (citing *Al–Harbi,* 85 F.3d at 684). It is also clear that an arbitration panel is free to consider and reject the parties' arguments in due course. *Id.* at 17. Arguably, the manifest disregard standard demands "more than error or misunderstanding with respect to the law." *Id.* However, on a spectrum with fair consideration and rejection of an argument at one end, and clear misconduct at the other, it is unclear where manifest disregard falls. While it definitely falls closer to clear misconduct, whether it is a hair's width away, or an arm's length away, is uncertain. Here, plaintiff makes no claim that any of the four enumerated grounds is present. Therefore, the Court must review the arbitral award under the manifest disregard standard.

### C. Plaintiff's "Manifest Disregard" Showing

 Plaintiff claims that her arbitration panel disregarded this circuit's law concerning allocation of arbitral fees. Therefore, plaintiff must show that the governing law is well-defined and clearly applicable, that the Panel was aware of the governing law, and that the Panel expressly sidestepped it. In addition, there must be no colorable support for the Panel's award in the record; if it seems that the Panel rejected plaintiff's argument after fair consideration, then plaintiff's showing falls short, and the Court must enter the Panel's judgment.

4. Several of the parties' letters are addressed to the arbitrators, Cynthia Boyce, Fred Shinagel, and William Malloy, or to the arbitrators c/o Valerie Bailey Johnston, at the NASD. Plaintiff sent four letters about the fee allocation to the NASD on May 12, 1997, July 31, 1997, August 22, 1997, and September 2, 1997. Defendant sent four responsive letters to the NASD: two on July 2, 1997, one on August 25, 1997, and one on September 5, 1997.

5. The other cases on which plaintiff relied are *Shankle v. B–G Management of Colorado, Inc.,* 163 F.3d 1230, 1234–5 (10th Cir.1999) (arbitration agreement unenforceable under the

### 1. The Panel's Knowledge of the Governing Law

Taking the steps of plaintiff's showing out of turn, plaintiff has shown that the Panel was aware of what she contends is our circuit's arbitral fee allocation jurisprudence. As proof of the Panel's knowledge, plaintiff submitted a series of letters from plaintiff to the Panel and from defendant to the Panel arguing the parties' respective interpretations of the governing law. These letters, and, in particular, the August 26, 1999 letter from Valerie Bailey Johnston to plaintiff's counsel informing him that the parties' letters discussing the allocation of arbitral fees had been forwarded to the Panel, demonstrated that the Panel was well aware of plaintiff's fee allocation arguments.[4]

### 2. The Governing Law Concerning Allocation of Arbitral Fees

 However, plaintiff's arguments are only that—arguments. The governing law in this area is far from "well defined, explicit, and clearly applicable to the case." *DiRussa,* 121 F.3d at 821. Plaintiff relies heavily on *Cole v. Burns Int'l Sec. Svcs.,* 105 F.3d 1465, 1485 (D.C.Cir.1997) and its progeny[5] for the proposition that a plaintiff cannot be required to arbitrate her public law claims if a condition of employment requires her to pay all or part of the arbitrator's fees and expenses. *See* Plaintiff's Cross–Mot. at 2–4. In *Cole,* the D.C. Circuit considered the assignment of arbitration fees to an employee who had been

FAA because it required employee to pay half of arbitrator's fees, estimated at $1875—$5000); *Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998) (refusing to compel arbitration where exorbitant AAA filing fees plus the fact that the arbitration agreement limited plaintiff's remedy for statutory discrimination claims to an award of damages for breach of contract); *Cremin v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 957 F.Supp. 1460, 1472 n. 10 (N.D.Ill.1997) (see discussion, supra); *McWilliams v. Logicon, Inc.,* 1997 WL 383150 (D.Kan. June 4, 1997) (adopting Cole's fee allocation analysis and concluding that defendants must pay the entire arbitration fee).

forced to sign a pre-dispute arbitration agreement under which only the employer could compel arbitration, and who was in arbitration proceedings because he had lost his job. *See Cole,* 105 F.3d at 1485. The court articulated its holding in a larger, public policy context:

> ... [I]t would undermine Congress' intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court. *Id.* at 1484.

Plaintiff was required to arbitrate her claims pursuant to her Uniform Application for Securities Industry Registration or Transfer ("Form U–4"). Therefore, she argues, under the spirit and the letter of *Cole,* she cannot be required to pay any part of the arbitration fees, much less $8,376.

The *Cole* court demarcated acceptable and unacceptable fees in some detail. The court's general principle was that a plaintiff can be charged with any reasonable costs akin to the filing fees and other administrative expenses that attend pursuing a federal court action, but not with fees that do not have a federal court counterpart. *Id.* at 1484. Acceptable charges therefore included filing, administrative, room rental, court reporter's, and attorney's fees. *Id.* at n. 12. Unacceptable charges included the arbitrator's honorarium, expenses, and any other costs associated with the arbitrator's services. *Id.* at n. 15.

Defendant argues that *Cole* is not applicable to plaintiff's case because *Cole* addressed the rules and procedures of an American Arbitration Association ("AAA") case, and plaintiff's case was arbitrated under National Association of Securities Dealers ("NASD") rules. In *Cole,* the court highlighted the fact that the proce-

dures governing arbitration in the securities industry are very different from the AAA procedures at issue in *Cole:*

> The arbitration agreement in this case presents an issue not raised by the [Form U–4 arbitration] agreement in *Gilmer* [*v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ]... This was not an issue in *Gilmer* (and other like cases), because, under NYSE Rules and NASD Rules, it is standard practice in the securities industry for employers to pay all of the arbitrators' fees. *Employees may be required to pay a filing fee, expenses, or an administrative fee, but these expenses are routinely waived in the event of financial hardship. Id.* at 1483–4 (citation omitted) (emphasis added).

Defendant further argues that the forum fees assigned to LaPrade are more like *Cole's* acceptable administrative fees than the prohibited arbitration fees.[6] Finally, defendant argues that, while forum fees can be waived in cases of financial hardship, plaintiff has made no showing that she would qualify for a waiver.

Defendant draws its strongest ammunition against vacatur of the Panel's arbitral fee allocation from *Sobol v. Kidder, Peabody & Co.,* Inc., 49 F.Supp.2d 208 (S.D.N.Y.1999). Sobol, unlike the cases plaintiff relies on, *see* n. 8, was in exactly the same posture as plaintiff: a former employee arbitrating her gender discrimination claim before an NASD panel. Like plaintiff, Sobol's claims were dismissed; however, unlike plaintiff's panel, Sobol's panel divided the forum fees almost equally, requiring Sobol to pay over $25,000. Sobol moved to vacate the fee assessment,[7] and, relying on *Cole,* argued that assessment of fees against her violated public policy by discouraging arbitration. However, the district court distinguished *Cole*

---

**6.** The $8,376 in forum fees assessed against plaintiff amounts to $113.19 for each of the 74 hearing sessions and conferences in this case.

**7.** Sobol and the instant case share other important similarities, namely the same defendant and the same firm as plaintiff's counsel.

8

and found that it did not apply. *Id.* at 224. The court further held that

> [g]iven that the sharing of forum fees is authorized by NASD rules, and that arbitration is generally less expensive than litigation, the assessment of half of the forum fees against Sobol will neither discourage arbitration nor offend public policy. *Id.*

This Court is persuaded by the rationale of the *Sobol* court.

As the *Sobol* court concluded, provisions from the NASD Regulation Code of Arbitration Procedure should be added to this jurisprudential mix. The Panel's October 8, 1999 ruling divided the fees under § 10205(c) of the NASD Code of Arbitration Procedure. That section states in relevant part: "The arbitrators in their award, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees." *See* NASD Code of Arbitration Procedure Rule 10205(c). Thus, the Panel had a clear statutory grant of power under which to allocate forum fees. Contrary to plaintiff's contentions, the governing law is not "well defined, explicit, and clearly applicable" to this case. The parties' fair arguments on both sides of *Cole,* as well as the Panel's fair application of NASD rules, substantiate that it is not.

### 3. *Whether the Panel Ignored the Governing Law*

Plaintiff also fails to make an adequate showing that the Panel sidestepped the governing law. As is discussed, *supra,* the Panel's decision indicated that it allocated fees according to NASD Code Rule 10205(c).

### IV. Conclusion

For the foregoing reasons, plaintiff has not made an adequate showing that the Panel's decision evinces "manifest disregard" of the governing law, and there are no grounds to vacate the Panel's award in general or fee allocation provision in particular. Accordingly, it is hereby

**ORDERED** that defendant's motion to lift the stay, to confirm the arbitration award, and to enter judgment [74–1],[74–2],[74–3] is **GRANTED**, and it is

**FURTHER ORDERED** that plaintiff's cross motion to confirm the arbitration award in part, and to vacate the award in part, and to enter judgment [76–1][76–2] is **DENIED**, and it is

FURTHER ORDERED that the NASD Arbitration Award is CONFIRMED.