**Ameer SLAIHEM and Ace Insurance Company, Plaintiffs,**

v.

**SEA TOW BAHAMAS LTD., Marmarine International, Inc., and Gary Simmons d/b/a Sea Tow Northern Bahamas, Defendants.**

No. 99–7203–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 26, 2001.

Richard McAlpin, McAlpin & Brais, P.A., Miami, FL, for Plaintiffs.

James W. Stroup, Fort Lauderdale, FL, for Gary Simmons.

Michael J. McHale, Jensen Beach, FL, for Sea Tow Bahamas, Inc.

Robert D. McIntosh, Adorno & Zeder, P.A., Fort Lauderdale, FL, for MarMarine International, Inc.

### ORDER GRANTING MOTION
### TO DISMISS

MORENO, District Judge.

Plaintiffs filed this action in admiralty for breach of contract relating to the destruction of the *Midas* during a salvage operation. Defendant Gary Simmons d/b/a Sea Tow Northern Bahamas filed this motion to dismiss for lack of personal jurisdiction. The Court finds that because there is no basis for exercising personal jurisdiction independent of the salvage contract and that the terms of the salvage contract, including the forum selection clause, are unenforceable against Simmons, this Court lacks personal jurisdiction over Simmons. Accordingly, Simmons's motion to dismiss for lack of personal jurisdiction is GRANTED.

### Background

The *Midas* is a 70 foot Hatteras motor yacht owned by Plaintiff, Ameer Slaihem. On February 17, 1999, the *Midas* was grounded on a reef near the west End on Grand Bahama Island, Bahamas. Gary Simmons of Sea Tow Bahamas, Ltd. and John Gordon of MarMarine International, Inc. were hired to refloat the yacht. During the salvage operation the vessel was destroyed.

Slaihem and Ace American Insurance Company, the insurer of the vessel, have sued the Defendants, Sea Tow, Gary Simmons, and MarMarine for breach of contract under admiralty law. Simmons has filed this motion to dismiss for lack of personal jurisdiction. As grounds he states that he is a citizen and resident of the Bahamas and that there are no acts that would confer personal jurisdiction over him.

At the center of the personal jurisdiction issue is the salvage contract between the parties. The two page contract states, "MarMarine in association with Sea tow Bahamas/Gary Simmons, from here on known as 'Salvors' will recuperate said vessel [the *Midas*]." Salvage Contract at p. 1. The contract provides for the salvage and towing of the vessel, and has three signature blocks for Sea Tow (Simmons), the Vessel Owner/Agent, and MarMarine. The Vessel Owner/Agent and MarMarine signed the contract, Simmons did not. Under the signature block is an additional paragraph which provides that:

It is agreed between the parties that this is a binding contract and fully en-

forceable. In addition, any disputes arising from this will be settled in accordance with the laws of the state of Florida in Broward County.

Salvage Contract p. 2.

Plaintiffs claim that despite Simmons's tenuous ties to Florida, this court has jurisdiction based on the forum selection clause in the salvage contract. Plaintiffs further argue that even though the salvage contract was not signed by Sea Tow, it should bind Simmons since he was working with MarMarine on the salvage as joint venturers and, accordingly, MarMarine can bind Simmons to the forum selection clause.

This court referred this matter to United States Magistrate Judge Robert L. Dubé to conduct an evidentiary hearing and specifically required Judge Dubé to issue a report and recommendation on the following issues:

(1) Whether Gary Simmons's contacts with Florida, independent of the salvage contract, suffice for this court to exercise personal jurisdiction over the Defendant? If not,

(2) Whether a joint venture existed between Gary Simmons and MarMarine?

(3) Whether the venue selection clause in salvage contract is valid?

(4) Whether Gary Simmons can be bound by the venue selection clause contained in the salvage contract?

On February 15, 2001, Judge Dubé entered his report and recommendation after conducting the required evidentiary hearing.

In relation to the salvage contract, Judge Dubé found that the impetus of the contract was that Gordon wanted to insure that he would get reimbursed for expenses he was incurring on Slaihem's behalf. Gordon had drafted the salvage agreement while in Freeport and informed Slaihem that the agreement was actually an agreement between Gordon and Slaihem. Simmons was not involved in drafting the contract and did not agree to any of the contract's terms. Slaihem did not pursue Simmons and require his signature after he was made aware that Simmons had not signed the agreement.

Judge Dubé also found that Simmons has been to Florida six or seven times in the last five years to visit his mother and to deliver boats. During those visits, Simmons stayed no longer than a week and sometimes only a day. The hearing revealed that Simmons purchased two boats for his business while in Florida, though he currently uses only one of them. During his Florida stays he has bought parts for his boats and personal effects. Simmons maintains two bank accounts in Florida that he shares with his mother. Monies received from his U.S. customers had been deposited in these accounts. One of the bank accounts was opened by his mother without his knowledge and he was unaware of it until recently. Plaintiffs highlight five wire transfers/deposits from purported U.S. customers, affiliates, and insurance companies involving the accounts he maintains in Florida.

Judge Dubé concluded that the contract and the forum selection clause were unenforceable against Simmons, that no joint venture existed between MarMarine and Gary Simmons, that MarMarine had no authority to bind Gary Simmons/Sea Tow through the contract, and that Plaintiffs failed to prove a statutory basis for personal jurisdiction. Following this report and recommendation, Plaintiffs filed their objections and Defendants filed their responses to Plaintiffs objections.

### Analysis

The doctrine of personal jurisdiction limits upon whom a court may impose a binding and enforceable judgment. *McGee v. International Life Insurance Company*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d

223 (1957). Personal jurisdiction principles safeguard defendants from being unwillingly placed under the jurisdiction of a foreign court in a manner that is unjust and inequitable. *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Court begins its analysis of the personal jurisdiction issue with the salvage contract.

## A. Salvage Contract

■■■ There is a sharp difference between federal law as it relates to personal jurisdiction where a forum selection clause is involved and Florida law. *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 918 (11th Cir.1989). In Florida law, a forum selection clause is not a sufficient basis for a conferral of personal jurisdiction unless there is an independent basis for personal jurisdiction under § 48.193, Florida Statutes (2000), Florida's long arm statute. Under federal law, however, "The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable nor unjust." *Proudfoot*, 877 F.2d at 921; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972) (holding that a forum selection clause should be enforced unless the clause was unreasonable, unjust, or invalid because of fraud or overreaching). In admiralty cases, federal law governs the enforceability of forum selection clauses not state law. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

### 1. Simmons Is Not Bound by the Contract

The first theory by which Plaintiffs seek to bind Simmons is through the forum selection clause in the salvage contract. Although Simmons is not a signatory to the salvage contract, Plaintiffs argue that a non-signatory to an agreement may be bound by its terms including a forum selection clause when their conduct is so closely or intimately related to the contract that it is foreseeable that it will be bound. In support of this contention, Plaintiffs rely primarily on *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285 (11th Cir.1998) and *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F.Supp.2d 787 (E.D.Va.2000). In both cases the choice of law or forum selection clause at issue was held to be enforceable against the non-signatories to the contract.

In *Lipcon*, four plaintiffs sued Lloyd's in connection with their business arrangement related to insurance. Two of the plaintiffs and Lloyd's had entered into underwriting agreements, which contained choice of law clauses. The other two plaintiffs, the respective spouses of the signatories, had not signed underwriting agreements but had supplied letters of credit to provide collateral for their respective spouses. The two non-signing plaintiffs argued the choice of law clauses did not apply to them. This Court determined and the Eleventh Circuit agreed that the two non-signing plaintiffs were bound by the choice of law clauses as "the interests of the spouses in this dispute are completely derivative of those of the Name plaintiffs—and thus 'directly related to, if not predicated upon' the interests of the name plaintiffs." *Lipcon*, 148 F.3d at 1299.

In *Allianz*, the plaintiff was the subrogee of a non-signing party, the subrogor, to a bill of lading that contained a forum selection clause. The subject matter of the bill of lading was the goods of the subrogor and the signatories to the bill of lading were the shipper and the carrier of the goods. The court held that the insurance company Allianz, the subrogee, was bound by the forum selection clause because the shipper was the agent of the

subrogor. *Allianz*, 131 F.Supp.2d at 792. In binding the plaintiff to the terms of the forum selection clause, the court held, "Allianz filed suit on the bill of lading, and thereby accepted its terms, including the forum selection clause." *Id.* The *Allianz* court did not base its decision on the closeness of the relationship of the parties but determined that as the suit brought was one entirely based on the bill of lading, all of the contract terms would be enforced if any were to be enforced.

■ This Court finds that the relationship of Simmons and Gordon is more distant than that of the plaintiffs in *Lipcon*, who were spouses with entirely derivative claims. Here the interests of Simmons and MarMarine are not directly related; their relationship is no closer than that of business associates. Furthermore, there is another significant difference between the instant case and *Lipcon* and *Allianz*. In both *Lipcon* and *Allianz* the party arguing against the enforcement of the forum selection or choice of law clause was the party initiating the action. Neither court bound a non-signing defendant to a forum selection clause in order to exercise personal jurisdiction over the defendant. *See also Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir.1993) (holding that forum selection clause was applicable to non-signing co-plaintiffs who were closely related to the dispute). What the Plaintiffs propose is to bind a non-signing defendant to a contract that in turn will serve as the sole basis for exercising personal jurisdiction over the defendant. As Plaintiffs proposition rests not on explicit consent to be bound as in *Proudfoot*, but on implicit consent, a court would have to consider whether binding the defendant offends due process. In the instant case, the due process considerations weigh heavily in Simmons's favor.

## 2. Simmons and MarMarine Were Not Engaged in a Joint Venture

■ Plaintiffs also argue that Simmons is bound by the forum selection clause because they contend that Simmons and MarMarine were involved in a joint venture. "Under Florida law, a joint venture is defined as 'a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity.'" *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir.1990) (quotations omitted). Outside of the salvage contract, Plaintiffs have produced no evidence of an express agreement between Simmons and MarMarine to engage in a joint venture. Of course the salvage contract itself does not contain Simmons' signature, nor was he involved in the negotiating or drafting of it. Plaintiffs have failed to produce any evidence of Simmons giving Gordon the authority to bind him in a contract.

■ While the Eleventh Circuit acknowledged that a joint venture agreement need not be written, the *Browning* court noted that the Florida Supreme Court "observed that 'the very fact that the agreement was not reduced to writing is evidence, however slight, that no such agreement actually existed.'" *Browning*, 918 F.2d at 1520 (quoting *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla.1957)). The heavy and difficult burden to establish the joint venture absent an express agreement lies with the party alleging the joint venture. *Kislak*, 95 So.2d at 515. The Eleventh Circuit found in *Browning* that because there was no agreement on several essential terms, there was no issue of material fact about the existence of the joint venture. *Browning*, 918 F.2d at 1521.

Judge Dubé found no evidence of any agreement between MarMarine and Simmons on any terms that would be essential

to the alleged joint venture. The fact that Gordon and Slaihem agreed that the purpose of the contract was so that Gordon would get reimbursed for the expenses he had incurred on Slaihem's behalf does not support Plaintiffs' contention that MarMarine and Simmons were engaged in a joint venture. This Court agrees with Judge Dubé's determination that Plaintiffs have failed to meet their burden of establishing a joint venture between Simmons and MarMarine.

## B. Personal Jurisdiction Independent of Salvage Contract

■ Although at oral argument, Plaintiffs backed off of its argument that this Court had personal jurisdiction outside of the salvage contract, nevertheless, this Court must determine whether it has personal jurisdiction over Simmons independent of the salvage contract. First this Court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.1996). If so, then the Court must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.* (citations omitted). For a court to impose *in personam* jurisdiction over a defendant, both the long arm statutes of the forum state and the due process requirements of the Fourteenth Amendment must be complied with. *Burger King v. Rudzewicz*, 471 U.S. 462, 463–64, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### 1. Florida Long Arm Statute

■ Each state has a long arm statute that controls the instances where nonresident defendants will be subject to the jurisdiction of courts in that state. Long arm statutes cannot broaden the reach of the court beyond what is constitutionally permissible, but can restrict the jurisdiction of a court even to less than what is constitutionally permissible. There are generally two types of long arm statutes. The first type of statute is one in which a court is provided with jurisdiction as broad as is constitutionally permitted by the United States Constitution as interpreted by the courts. The second type of long arm statute is one that limits the power of the courts from what the Constitution permits, and thereby gives nonresident defendants greater immunity from suit.

■ Florida's long arm statute belongs in the latter category, it restricts jurisdiction over non-residents to specifically enumerated instances. This Court is bound to interpret Florida's long-arm statute as the Florida Supreme Court would, and absent any guidance from the state's highest court, this Court is bound to adhere to decisions of Florida's intermediate courts. *Sculptchair*, 94 F.3d at 627. Florida's long-arm statute is to be strictly construed and when a defendant challenges jurisdiction the burden shifts to plaintiff to prove personal jurisdiction. *Id.*

Fla. Stat. § 48.193 provides jurisdiction when a defendant engages in activity specifically enumerated in the statute or through substantial activity. Plaintiffs must establish that Simmons engaged in the activity enumerated in Fla. Stat. § 48.193(1) or had substantial activity in Florida under subsection (2). Plaintiffs do not contend that Simmons's actions fall under subsections (1)(b)-(f) or (h), and these appear to be inapposite under the circumstances. The relevant provisions of Fla. Stat. § 48.193(1) are as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and,

if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

\* \* \* \* \* \*

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1).

### a. Carrying on a Business or a Business Venture in Florida

None of the acts alleged including the purchase of two boats, parts, personal effects nor the two bank accounts into which five wire transfers/deposits are events related to this cause of action. A more difficult issue presented involves the allegations that Simmons and MarMarine were engaged in a joint venture.

 Under Florida law, a joint venture that is not formed in Florida must contemplate and actually involve performance in substantial part within Florida. *Sutton v. Smith*, 603 So.2d 693, 698 (Fla. 1st DCA 1992). This Court has already determined that the Plaintiffs have not proved the existence of a joint venture between MarMarine and Simmons. Even if such a joint venture was found to exist, there is an insufficient basis for finding the requisite minimum contacts with the forum state for an exercise of personal jurisdiction over the non-resident member absent explicit consent to be haled into this forum. Id. at 699. Thus, there is no allegation that any activity related to the joint venture took place in Florida. There are insufficient contacts to result in personal jurisdiction under subsection (1)(a).

### b. Breaching a Contract in Florida

 Subsection(1)(g) requires contractual acts be performed in Florida. In *C.R. McRae v. J.D./M.D., Inc.*, 511 So.2d 540, 542 n. 2 (Fla.1987), the Florida Supreme Court held that where there is no doubt that Florida was not the place where the contract was to be performed, the applicability of the statute is negated. Even if a contractual relationship existed between Simmons and MarMarine or between Simmons and Slaihem, the fact that none of the acts were performed in Florida dictates a finding that insufficient contacts exist under subsection (1)(g) to establish a basis for personal jurisdiction absent a provision wherein Simmons consented to litigation in this forum.

### c. Substantial Activity

 Plaintiffs alternatively seek to prove that this Court has personal jurisdiction through Fla. Stat. § 48.193(2) which states:

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). To establish that a defendant is engaged in substantial activity within the state, the activity must be more than "incidental, almost entirely personal contacts with the state. . . ." *Elmlund v. Mottershead*, 750 So.2d 736, 737 (Fla. 3d DCA 2000).

 Simmons's activity in Florida consisted of six or seven trips; the purchase of two boats, parts for his boats, and personal effects; two bank accounts that he shares with his mother and five wire transfers/deposits from purported U.S. customers, affiliates, and insurance companies involving these accounts. It is the de-

termination of this court that this activity is not sufficient for this Court to have personal jurisdiction under subsection (2) of Florida's long arm statute. *See also Polymers, Inc. v. Ultra Flo Filtration Systems, Inc.*, 33 F.Supp.2d 1008, 1013–14 (M.D.Fla.1998) (foreign corporation's annual gross sales in Florida of no more than $6,000 was not substantial business activity under Florida's long-arm statute); *Milberg Factors, Inc. v. Greenbaum*, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991) (because plaintiff was a foreign corporation that did not solicit business or maintain an office, agent, employee, or telephone listing in Florida, the district court found that Milberg's contacts with Florida were isolated). As the requirements of Florida's long arm statute have not been met, it is not necessary for this Court to analyze whether personal jurisdiction is consistent with the Due Process Clause of the Constitution.

## Conclusion

Since the Court finds that there is no basis for exercising personal jurisdiction independent of the salvage contract and that the salvage contract is unenforceable against Simmons, this Court lacks personal jurisdiction over Simmons and his motion to dismiss for lack of personal jurisdiction is GRANTED.