**FOUR SEASONS HOTELS AND RE- SORTS, B.V., Four Seasons Hotels Ltd., and Four Seasons Caracas, C.A., Petitioners,**

v.

**CONSORCIO BARR, S.A., Respondent.**

**No. 02–23249–CIV–MOORE.**

United States District Court,
S.D. Florida,
Miami Division.

June 4, 2003.

John C. Carey, Esq., Stroock & Stroock & Lavan, Miami, FL, John J. Rodriguez, Esq., Albert J. Xiques, Rodriguez & Machado, P.A., Coral Gables, for Petitioner.

Eduardo Palmer, Esq., Edwin Torres, Esq., Steel Hector & Davis, LLP, Miami, for Respondent.

## *ORDER CONFIRMING ARBITRATION AWARD*

MOORE, District Judge.

THIS CAUSE came before the Court upon Petitioners Four Seasons' Petition to Confirm and Enforce Arbitral Award (DE # 1) and its Emergency Motion for a Temporary Restraining Order Enjoining Respondent Consorcio Barr, S.A. from Violating Arbitration Award (DE # 21).

## BACKGROUND

The parties are comprised of Petitioner Four Seasons Hotels and Resorts, B.V., a Dutch corporation ("Four Seasons Netherlands"); Petitioner Four Seasons Hotels Limited, a Canadian corporation ("Four Seasons Canada"); Petitioner Four Seasons Caracas, C.A., a Venezuelan corporation ("Four Seasons Venezuela") (collectively, "Four Seasons" or "Petitioners"); and Respondent Consorcio Barr, S.A., another Venezuelan corporation ("Consorcio" or "Respondent").

The heart of this action arises from Four Seasons' petition to confirm a partial arbitration award (the "award" or "partial award") issued by the Arbitral Tribunal of the American Arbitration Association (the "Tribunal") in Miami, Florida on October 10, 2002 (DE # 1). Four Seasons commenced the arbitration on November 30, 2001, based on alleged breaches of several agreements between the parties regarding Four Seasons' management and operation of a hotel and related real property owned by Consorcio and located in Caracas, Venezuela. Portions of the award enjoined Consorcio from pursuing litigation in Venezuelan courts. Four Seasons now alleges that Consorcio violated the award by filing a motion in Venezuelan court to remove Four Seasons from operating the hotel owned by Consorcio and run, via agreements between the parties, by Four Seasons.

In a separate action between the parties that is now concluded, Case No. 01–4572–CIV–MOORE, Four Seasons moved for a preliminary injunction enjoining Consorcio from pursuing parallel litigation in Venezuela and for an order compelling Consorcio to proceed with arbitration (01–4572–

CIV–MOORE DE # 117).[1] On July 30, 2002, Magistrate Judge John J. O'Sullivan issued a Report and Recommendation advising that Four Seasons' motion for a preliminary injunction and to compel arbitration be denied (01–4572–CIV–MOORE DE # 198). However, from August 2, 2002 through October 2002, while the Court was considering Four Seasons' original motions (01–4572–CIV–MOORE DE # 117) and even after Magistrate Judge O'Sullivan issued his Report and Recommendation, Consorcio voluntarily participated in the arbitration commenced by Four Seasons.

In that arbitration, the Tribunal first addressed (1) whether the panel had jurisdiction to decide whether the dispute was arbitrable, and (2) if so, whether the contested issues were subject to arbitration. On October 10, 2002, after being fully briefed by both parties, the Tribunal found that, under U.S. procedural law and Venezuelan substantive law, it possessed the authority to decide whether the issues were subject to arbitration and that the issues were in fact arbitrable.[2] The award also enjoined Consorcio from pursuing parallel litigation in Venezuela. This Court issued an Order dated, coincidentally, October 11, 2002, adopting the substance of Magistrate Judge O'Sullivan's Report and Recommendation (01–4572–CIV–MOORE DE # 236). In that Report and Recommendation, Magistrate Judge O'Sullivan concluded that the Venezuelan court had ruled the arbitration agreements invalid and that Four Seasons' motion for a preliminary injunction and to compel arbitration should be denied (01–4572–CIV–MOORE DE # 198).

On November 15, 2002, Consorcio moved for a preliminary injunction against enforcement of the award in the Tenth Superior Court for Civil, Commercial and Traffic Matters in and for the Judicial District of the Metropolitan Area of Caracas, Venezuela. On December 2, 2002, that court granted Consorcio's motion to suspended execution of the award. Lastly, on March 21, 2003, the same Venezuelan court declared the substance of the award null and void. Four Seasons bring these motions to enforce the award and, consequently, enjoin Consorcio from further proceedings in Venezuelan court related to the issues addressed by the Tribunal.

Consorcio opposes confirmation of the award for six reasons:

(1) the arbitration agreement is invalid under Venezuelan law and confirmation should therefore be denied under article V(1)(a) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention");

(2) this Court previously found that the Venezuelan courts ruled the arbitration agreement invalid under Venezuelan law and confirmation is therefore barred under the doctrine of collateral estoppel;

(3) the Tribunal's award has been suspended by a Venezuelan court and confirmation should therefore be denied under article V(1)(e) of the Convention;

(4) Consorcio's application to a Venezuelan court to set aside or suspend the award allows this Court to adjourn its decision on confirmation of the award under article VI of the Convention;

---

**1.** Petitioners in this action comprise three of the four plaintiffs in the earlier case, Case No. 01–4572–CIV–MOORE. The fourth plaintiff, Four Seasons Hotels (Barbados), is not a party to this action. Consorcio, along with an individual, comprised the defendants in that action. Unless otherwise noted, all docket entry citations ("DE # ") refer to the present case.

**2.** While the award is dated October 10, 2002, it appears that it was not distributed to the parties until October 30, 2002.

(5) the Court lacks personal jurisdiction over Consorcio; and

(6) venue is improper.

## DISCUSSION

### 1. *Confirmation under Chapter 1 of the FAA or the Convention*

■ The Court must first determine whether to analyze the petition to confirm the award under (1) either 9 U.S.C. §§ 1–16, Chapter 1 of the Federal Arbitration Act ("FAA"), or 9 U.S.C. §§ 201–208, Chapter 2 of the FAA, which implements the Convention, as Four Seasons argues, or (2) follow Consorcio's contention that only the Convention applies. Specifically, Four Seasons contends that they can obtain overlapping enforcement under either Chapters 1 or 2 of the FAA because the Court would have jurisdiction by virtue of the arbitration's Miami, Florida situs and as a non-domestic award under the Convention, respectively. Four Seasons thus argues that a finding of confirmation under either chapter of the FAA is sufficient. Consorcio states that the Convention is the sole guideline for enforcement of the award.

Chapter 2 of the FAA details when an arbitral award falls under the Convention:

An arbitration agreement or arbitral tribunal award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (2002).[3]

Both the plain language of the statute and subsequent case law support the finding that the petition to confirm the award falls exclusively under the Convention. The Convention applies to an award rendered in the United States using foreign law or arising from a dispute between foreign citizens of signatory nations. *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir.1983) ("We adopt the view that awards 'not considered as domestic' denotes awards which are subject to the Convention not because made abroad, but within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction."). The award, rendered in Miami, applied Venezuelan law for substantive issues and originated from a dispute between Venezuelan and other foreign entities concerning performance of a contract in Venezuela. The award is therefore "not considered as domestic" and invokes the Convention. *Id.* at 933 ("Had Congress desired to exclude arbitral awards involving two foreign parties rendered within the United States from enforcement by our courts it could readily have done so. It did not.").[4]

---

3. Congress, in its 1970 declaration of accession to the Convention, opted to apply the Convention on the basis of reciprocity. 9 U.S.C. § 201 note (2002). Since Venezuela is listed as a signatory nation to the Convention, *id.,* reciprocity is not an obstacle to subject matter jurisdiction under Chapter 2 of the FAA.

4. Although not raised by the parties, the possibility exists that the Inter–American Convention on International Commercial Arbitration (the "Inter–American Convention") applies to this case. Chapter 3 of the FAA, which implements the Inter–American Convention, provides in part:

When the requirements for application of both the Inter–American Convention and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, are met, determination to

Contrary to Four Seasons' argument, Chapter 1 of the FAA is unavailable to confirm the award independently. Based on the Eleventh Circuit's opinion in *Industrial Risk Insurers v. M.A.N Gutehoffnungshutte*, 141 F.3d 1434 (11th Cir.1998), the award can only be confirmed under the Convention and not Chapter 1 of the FAA. The court in *Industrial Risk Insurers* held that a motion to vacate an arbitration award rendered in Tampa, Florida, using Florida substantive law and between United States entities and a German corporation fell under the Convention. The court found that the Convention provided exclusive jurisdiction because "an arbitral award made in the United States, under American law, falls within the purview of the New York Convention—and is thus governed by Chapter 2 of the FAA—when one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States." *Id.* at 1441. The Court of Appeals, in overruling the district court, held that Chapter 1 of the FAA did not apply to the dispute. *Id.*

at 1439–40; *but see Bergesen*, 710 F.2d at 934 ("That this particular award might also have been enforced under [Chapter 1 of] the Federal Arbitration Act is not significant. There is no reason to assume that Congress did not intend to provide overlapping coverage between the Convention and [Chapter 1 of] the Federal Arbitration Act."). Consequently, the award falls exclusively under the Convention.

■ In light of this conclusion, it is necessary to discuss what role, if any, Chapter 1 of the FAA plays in the current action. Within Chapter 2 of the FAA, 9 U.S.C. § 208 provides that "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention as ratified by the United States." The plain meaning of the statute is clear: a court may look to Chapter 1 of the FAA in determining whether to confirm an arbitral award so long as it does not conflict with the Convention and its implementing legislation, 9 U.S.C. §§ 201–

---

which Convention applies shall, unless otherwise expressly agreed, be made as follows:

(1) If a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter–American Convention and are member states of the Organization of American States, the Inter–American Convention shall apply.

(2) In all other cases the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall apply.

9 U.S.C. § 305 (2002). Venezuela is a party to the Inter–American Convention. Inter–American Convention, *reprinted in* 9 U.S.C. § 301 note (2002).

There are four contracts giving rise to the arbitration, all of which contain nearly identical arbitration agreements. The peculiar issue at bar is that three of the four agreements are between different combinations of parties: Four Seasons Venezuela and Consorcio entered into the Hotel Management Agreement

dated April 9, 1997; Four Seasons Netherlands and Consorcio entered into the Hotel Advisory Agreement dated April 9, 1997; and Four Seasons Canada and Consorcio entered into the Hotel Services Agreement dated April 9, 1997, and a Hotel Pre–Opening Agreement dated February 2, 1996 (collectively, the "Agreements"). Pursuant to 9 U.S.C. § 305, if the arbitration only addressed disputes arising out of the Hotel Management Agreement, the Inter–American Convention would apply since both parties to that arbitration agreement are Venezuelan citizens. However, because the arbitration and the subsequent proceedings now before the court involve all four contracts and their accompanying arbitration agreements, application of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 trumps use of the Inter–American Convention, as a majority of the parties to the arbitration agreements at issue are not citizens of states that have ratified or acceded to the Inter–American Convention. 9 U.S.C. § 305 (2002).

208. While not explicitly on point with this issue, the court in *Industrial Risk Insurers* held that grounds not enumerated in the Convention do not provide valid cause to vacate an award; namely, that an award cannot be vacated under the Convention on the ground that it is "arbitrary and capricious." *Indus. Risk Ins.*, 141 F.3d at 1443 (holding that arbitrary and capricious ground for vacatur, recognized along with the four grounds for vacatur specified in Chapter 1 of the FAA, could not be used to vacate award under the Convention).[5] The court found that because the Convention listed the defenses to confirmation as "exclusive" defenses, the "arbitrary and capricious" ground for vacatur is inapplicable to a non-domestic award falling under the Convention. *Id.* at 1446. This holding, along with the *Industrial Risk Insurers* court's refusal to analyze an award under Chapter 1 of the FAA when the Convention applied, can be employed in the present case to exclude confirmation under Chapter 1 of the FAA.

To the extent that other courts have used Chapter 1 as an alternative or substitute authority to confirm or deny an award, this Court finds these holdings in-

applicable. For example, the District Court for the District of Columbia similarly confronted confirmation of a non-domestic arbitral award vacated by a foreign court in *In re Chromalloy*, 939 F.Supp. 907 (D.D.C.1996). In that case, the court found that, because the award satisfied the requirements for confirmation set forth in Chapter 1 of the FAA, confirmation was proper under the Convention. The court looked to article VII of the Convention, which states that "[t]he provisions of the present Convention shall not ... deprive any interest [sic] party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law ... of the country where such award is sought to be relied upon." Convention article VII(1), *reprinted in* 9 U.S.C. § 201 note (2002). The *Chromalloy* court interpreted this as requiring it to analyze the award under Chapter 1 of the FAA, if that chapter would require confirmation under the circumstances. 939 F.Supp. at 909–11, 914. However, the Eleventh Circuit's decision in *Industrial Risk Insurers* does not give Chapter 1 of the FAA such deference. 141 F.3d at 1439–40.[6] Indeed, despite the *Chromalloy* court's conclusion that no conflict exists

---

**5.** Although not relevant to this case because the Court only addresses a petition to confirm, the Eleventh Circuit took a different route from the Second Circuit case of *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir.1997), in not distinguishing, for purposes of the Convention's applicability, between a petition to confirm an arbitral award and a motion to vacate an award. The Eleventh Circuit appears to disagree with the *Toys "R" Us* court in that when facing a motion to vacate a non-domestic award rendered in the United States, as was the Second Circuit, the Eleventh Circuit refused to consider grounds for vacatur enumerated in Chapter 1 of the FAA, holding that the Convention's exclusive grounds for refusing confirmation were also the only grounds upon which a court can review a motion to vacate a non-domestic award. *Indus. Risk Ins.*, 141 F.3d at 1441–43; *but see Toys "R" Us, Inc.*, 126 F.3d at 21 ("We read Article

V(1)(e) of the Convention to allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this · case [Chapter 1 of] the FAA, to a motion to set aside or vacate that arbitral award."). The Eleventh Circuit, therefore, did not distinguish between a petition to confirm such an award and a motion to vacate as the Second Circuit did in *Toys "R" Us*, and impliedly held that both a petition to confirm and a motion to vacate an award rendered in the United States and "not considered domestic" are subject exclusively to the Convention.

**6.** Commentators note that tension exists between articles V and VII of the Convention as to whether these provisions contain permissive or mandatory terms. *See, e.g.,* Kenneth Davis, *Unconventional Wisdom: A New Look at Articles V and VII of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 37 Tex. Int'l L.J. 43 (2002). It is

between Chapter 1 and the Convention, 939 F.Supp. at 914, its holding implies that article VII of the Convention allows the wholesale exclusion of Chapter 2 of the FAA in favor of Chapter 1. Even if this was the intent of the Convention, 9 U.S.C. § 208 limits the ability to make this type of substitution. Nothing in *Industrial Risk Insurers* or 9 U.S.C. § 208 indicates that Chapter 1 is capable of serving as the primary framework for confirming an award "not considered as domestic" under the Convention, as *Chromalloy* suggests. Rather, Chapter 1 of the FAA merely augments the Convention to the extent no conflict exists between the two instruments. This Court will utilize Chapter 1 of the FAA accordingly.

**2. *Applicable Provisions of the Convention***

"The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (2002). These grounds are:

(a) The parties to the agreement ... were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to

arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention art. V(1)(a)-(2), *reprinted in* 9 U.S.C. § 201 note (2002). Additionally, article VI of the Convention permits a court to stay enforcement of an award "[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e) ...." Consorcio asserts that refusal to confirm is proper under articles V(1)(a) and (e) and, alternatively, article VI. The Court, as will be discussed below in section 3, also finds that Consorcio implicitly avers a public policy defense under article V(2)(b) in the form of its collateral estoppel argument.

unnecessary to take up this issue, as *Industrial Risk Insurers* provides sufficient guidance

to resolve the dispute presently before the Court.

■ Before delving into an analysis under the Convention, the Court notes that there is a "general pro-enforcement bias" manifested in the Convention. *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir.1974). The Supreme Court has long recognized this policy:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). In addition, the party opposing confirmation bears the burden of proving the applicability of the Convention's enumerated defenses. *Indus. Risk Ins.*, 141 F.3d at 1442.

### 3. *Article V(1)(a) and Collateral Estoppel*

■ Consorcio first argues that, because the Venezuelan courts have ruled that the arbitration agreements are invalid, article V(1)(a) is an appropriate ground for refusing confirmation of the award. However, Consorcio's prosecution of this issue in the Venezuelan courts was simply an attempt to wholly relitigate what the Tribunal had already fully considered and decided. The Tribunal clearly upheld the validity of the agreement, hearing exhaustive arguments before deciding that the dispute was arbitrable. Consorcio's primary argument consisted of its insistence that Venezuelan law, which vests exclusive jurisdiction in the Venezuelan courts to decide disputes relating to real property rights, barred arbitration of the dispute. The Tribunal concluded that:

> A perusal of the abundant briefs and documentation submitted by the Parties as well as their oral submissions during the Hearing eloquently evidences that their disputes do not relate to the creation, substance or contents, title, scope or extinction of immovable property rights . . . .
>
> . . . .
>
> . . . The Arbitral Tribunal must then reject Consorcio Barr's arguments refuting the Arbitral Tribunal's jurisdiction based on Article[ ] 47 of the PIL Act.

Award ¶¶ 17 & 19.

Although the Venezuelan courts held that the arbitration provisions were invalid because the dispute involved immovable property rights, Consorcio waived its right to reassert this position in court once it submitted to an arbitration in which the very same issue was in dispute. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 591 (7th Cir.2001) (holding that party seeking to avoid effect of arbitral award on basis of lack of agreement to arbitrate was estopped to do so under the Convention where she "freely participated" in the arbitration and her claims were already adjudged in arbitration decision). The arbitrability of the issue was left to the Tribunal, not the Venezuelan courts. Consorcio filed briefs with and presented documentary evidence to the Tribunal in support of its position. Because the Tribunal determined that the arbitration agreement did not violate Venezuelan law, the Court will not revisit this tired argument. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir.1998) ("Absent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings."); *Sarhank Group v. Oracle Corp.*, No. 01 Civ. 1285, 2002 WL 31268635, at *3–5 (S.D.N.Y. Oct. 9, 2002) (refusing to deny confirmation of award where arbitrability

of dispute under Egyptian law established by international arbitration tribunal in Egypt).

█ Similarly unpersuasive is Consorcio's contention that this Court's decision in the aforementioned case between the two parties, Case No. 01–4572–CIV–MOORE, declining to compel arbitration, acts to collaterally estop the award at issue here under the defense of issue preclusion. The Court first notes that collateral estoppel is not an enumerated defense to enforcement under the Convention and, on its face, should not be considered. *Indus. Risk Ins.*, 141 F.3d at 1443. However, as explained by the court in *Coutinho Caro & Co. U.S.A., Inc. v. Marcus Trading, Inc.*, Nos. 3:95CV2362 AWT, 3:96CV2218 AWT, 3:96CV2219AWT, 2000 WL 435566, at *8 n. 8 (D.Conn. Mar. 14, 2000), the doctrine of collateral estoppel, with that of *res judicata*, holds an important place in federal jurisprudence. Accordingly, this Court construes Consorcio's claim of collateral estoppel as an attempted defense under article V(2)(b) of the Convention, which permits refusal of enforcement where the competent authority in the country where confirmation is sought finds that enforcement of the award would be contrary to the public policy of that country. Convention art. V(2)(b).[7]

Indulging Consorcio in an analysis of its defense, however, finds that it is nonetheless deficient. Collateral estoppel, or issue preclusion, bars the relitigation of an identical issue of fact or law in a subsequent action where that issue was actually litigated and necessary to a decision in an earlier action. *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th

Cir.1991). In the earlier case between the parties, Case No. 01–4572–CIV–MOORE, Magistrate Judge O'Sullivan concluded in his Report and Recommendation that Four Seasons' motion to enjoin Consorcio from pursuing parallel litigation in Venezuela and to compel arbitration should be denied (Case No. 01–4572–CIV–MOORE DE # 198). However, Magistrate Judge O'Sullivan reached this conclusion based, in part, on the fact that the arbitration agreement at issue in Four Seasons' motion was unrelated to the agreement upon which that case was based. The Report and Recommendation stated that "[t]he litigation in Venezuela is based on the management agreement and the litigation in this Court is based on the license agreement." In recommending that the motion to compel arbitration be denied, Magistrate Judge O'Sullivan found that "[b]ecause[ ] the matters pending before this Court relate to the license agreement, not the management agreement ... the Court, at this juncture, should decline to compel arbitration relating to the management agreement." Nothing related to the oft-mentioned license agreement is presently before this Court. That the present action presents an identical issue of fact or law necessary to the earlier action is therefore doubtful.

Moreover, Consorcio submitted to and fully participated in the arbitration proceedings, even while Four Seasons' motion to compel arbitration in the earlier case was pending and after Magistrate Judge O'Sullivan recommended that the motion be denied.[8] Consorcio may not now maneuver to escape the effects of the subsequent award. *Slaney*, 244 F.3d at 591.

7. Because this Court is the "competent authority" referred to in article V(2), a debated issue which will be discussed in detail below in section 4, the applicable public policy is that of the United States.

8. While a United States Magistrate Judge's Report and Recommendation is not a final and enforceable order, *see generally* 28 U.S.C. § 636, the Court merely notes its existence and timing with respect to Consorcio's continued participation in the arbitration as evi-

Holding otherwise would render meaningless the time, labor and cost expended in relation to the arbitration. *Int'l Standard Electric Corp. v. Bridas Sociedad Anonima Petrolera Industrial Y Comercial,* 745 F.Supp. 172, 178 (S.D.N.Y.1990) ("The whole point of arbitration is that the merits of the dispute will *not* be reviewed in the courts, wherever they be located."). Regardless of the aforementioned findings of this Court and the Venezuelan courts, the Tribunal's determination of arbitrability cannot be disturbed absent "extraordinary circumstances." *Europcar,* 156 F.3d at 315. Because no such circumstances exist, neither article V(1)(a) nor article V(2)(b) of the Convention preclude confirmation of the award.

### 4. *Article V(1)(e) of the Convention: "Competent Authority"*

■ Article V(1)(e) of the Convention provides for denial of confirmation if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." As stated above, the award was made utilizing Venezuelan substantive law. The Venezuelan court subsequently nullified the award, finding that the agreements effectuating arbitration of the disputes were invalid under Venezuelan law—— the opposite conclusion of the Tribunal, which was fully briefed and heard evidence on the same matter by the parties. The issue here is whether the Venezuelan court was a "competent authority" to make that decision.

The parties entered into a series of four agreements governing different aspects of

dence that Consorcio was hedging its bets by participating in whichever forum would lead to a favorable result.

9. The content of this section is substantially the same as in the other Agreements, but appears under different section numbers in those Agreements.

their relationship, as detailed above. *See supra* n. 4. Each of the Agreements contain similar or identical language regarding the arbitration of disputes. Section 19.03 of the Hotel Management Agreement[9] states in part:

[A]ny dispute shall be settled by arbitration as follows:

. . . .

(b) . . . the decision of a majority of the panel (or such single arbitrator) when reduced to writing and signed by them shall be final, conclusive and binding upon the parties hereto, and may be enforced in any court having jurisdiction;

(c) the arbitration shall at the election of Operator [Four Seasons] be held in the City of Miami, Florida, United States of America or the City of Caracas, Republic of Venezuela and . . . except for those procedures specifically set forth in this section 19.03, shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

. . . .

Notwithstanding anything contained in this section 19.03, any of Owner or Operated shall be entitled to . . . (ii) commence legal proceedings (in which case the provisions of sections 22.10 and 22.11 governing jurisdiction and service of process shall govern) involving the enforcement of an arbitration decision or award arising out of this Agreement . . . .

Hotel Mgmt. Agreement § 19.03. Section 22.10,[10] referenced above, provides:

10. Section 22.11, also referenced in Section 19.03 of the Hotel Management Agreement, refers to designation of an agent for service of process and is immaterial to this analysis.

The parties hereto irrevocably:

(a) submit and consent to the non-exclusive jurisdiction of the courts of the Republic of Venezuela as regards any suit, action or other legal proceedings arising out of this Agreement.

(b) waive, and agree not to assert, by way of motion, as a defense or otherwise, in any such suit, action or proceedings, any claim that they are not personally subject to the jurisdiction of the courts of the Republic of Venezuela, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper, or that this Agreement or the subject matter hereof may not be enforced in such courts; and

(c) agree not to seek, and hereby waive any review by any court which may be called upon to enforce the judgment of the courts referred to in section 22.10(a), of the merits of any such suit, action or proceeding in the event of failure of any party to defend or appear in any such suit, action or proceeding.

Hotel Mgmt. Agreement § 22.10.

The Court construes these provisions to mean that either party may seek *enforcement* of the award in a Venezuelan court. Clearly lacking from the Agreements is language supporting Consorcio's ability to move a Venezuelan court to *nullify* the award. Accordingly, the Agreements do not make the Venezuelan courts a "competent authority" under article V(1)(e) of the Convention.

Moreover, a "competent authority" is a court of the country that supplied the procedural law used in the arbitration. *Int'l Standard Electric Corp.*, 745 F.Supp. at 178 ("[W]e hold that the contested language in article VI(e) of the Convention, '... the competent authority of the country under the law of which, [the] award was made' refers exclusively to procedural and not substantive law ...." (alteration

in original)); *id.* at 177 ("It is clear, we believe, that any suggestion that a Court has jurisdiction to set aside a foreign award based upon the use of its domestic, substantive law in the foreign arbitration defies the logic both of the Convention debates and of the final text, and ignores the nature of the international arbitral system."); *see also M & C Corp. v. Erwin Behr*, 87 F.3d 844, 848 (6th Cir.1996) (in adopting the holding of *International Standard Electric Corp.*, stating that "[r]esorting to the courts of the nation supplying the substantive law for the dispute does nothing to enhance the underlying principles of international arbitration because, under the terms of the New York Convention itself, judicial review of such an award is extremely limited and extends only to procedural aspects of the determination"). The Agreements stipulated that substantive Venezuelan law would apply, but that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ...." Hotel Mgmt. Agreement § 19.03(c). The procedural law can therefore be construed as being supplied by the United States. *Cf. Coutinho*, 2000 WL 435566, at *6 (holding that because arbitration was conducted in China pursuant to procedural rules of China International Economic and Trade Arbitration Commission, the courts of China, and not the district court, was the competent authority under article V(1)(e) of the Convention); *see also Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985) ("Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law ....").

Indeed, although Venezuelan substantive law applied to these proceedings, the Tribunal properly invoked U.S. procedural law based on its Miami situs. *Scherk*, 417 U.S. at 519, 94 S.Ct. 2449 ("An agreement

to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."). The award clearly states that, the parties having agreed to arbitrate in the United States, "it is a generally accepted principle in comparative arbitration law that the arbitral *lex arbitri,* governing the powers and authority of arbitrators sitting in the United States, is the law of the United States." Award ¶ 4. Therefore, the only "competent authority" under the Convention is, stated as modestly as possible, this Court. Accordingly, Consorcio cannot rely on article V(1)(e) of the Convention as grounds for refusing enforcement of the award.

### 5. *Article VI of the Convention*

■ Consorcio's argument that the Court should, alternatively, stay enforcement of the award based on an application to the Venezuelan courts to suspend the award likewise fails. Article VI allows the court to adjourn a decision on the enforcement of an arbitral award if an application to set aside or suspend the award has been made to a "competent authority." However, just as the Court determined in its discussion of Consorcio's defenses under article V, the Venezuelan courts are not a "competent authority" under article VI of the Convention. Article VI explicitly states that the "competent authority" to which it refers carries the same definition as the term does in article V. Therefore, Consorcio's assertion that its application to the Venezuelan courts for suspension of the award constituted an application to a "competent authority" is groundless.

### 6. *Personal Jurisdiction and Venue*

■ Consorcio, in a gasping effort, argues that personal jurisdiction is lacking. This argument is unavailing. The implementing legislation of the Convention, while granting subject matter jurisdiction to this action, 9 U.S.C. § 203, is silent as to personal jurisdiction. The Court thus first turns to state law to determine if personal jurisdiction exists over Consorcio. If a state law basis for jurisdiction exists, a court must next determine if "sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walter v. Blue Cross & Blue Shield United of Wis.,* 181 F.3d 1198, 1203 (11th Cir.1999). While Consorcio is correct in asserting that its mere agreement to Miami as the arbitral situs is insufficient to confer personal jurisdiction under Florida's general long-arm statute, Fla. Stat. Ann. § 48.193, *see Johns v. Taramita, Inc.,* 132 F.Supp.2d 1021 (S.D.Fla.2001) (holding, in motion to compel arbitration, that personal jurisdiction is not created merely by a party's agreement to arbitrate in a particular forum), its participation in the arbitration created personal jurisdiction under Fla. Stat. Ann. § 684.30. That statute states, "the conduct of an arbitration within this state . . . shall constitute a consent to the exercise of in personam jurisdiction by the courts of this state in any action authorized by this part." Fla. Stat. Ann. § 684.30 (West 2003).[11] Consorcio's participation in the arbitration in Miami falls within this statute. Moreover, subjecting Consorcio to jurisdiction under Fla. Stat. Ann. § 684.30

---

11. The statute's reference to "this part" encompasses Fla. Stat. ch. 684, which governs arbitration between parties who are "nonresident[s] of the United States." Fla. Stat. Ann. § 684.03(1)(a) (West 2003). Additionally, the chapter authorizes parties to apply for confir-

mation of arbitral awards. Fla. Stat. Ann. § 684.24 (West 2003). Therefore, Fla. Stat. Ann. § 684.30, conferring personal jurisdiction over the parties, would apply to Consorcio.

does not disturb the second requirement for finding personal jurisdiction under state law. In fact, given Consorcio's agreement to and participation in the Miami arbitral proceedings, finding that personal jurisdiction does *not* exist here would offend traditional notions of fair play and justice. Accordingly, Fla. Stat. Ann. § 684.30 confers personal jurisdiction over Consorcio.

Even if Florida law did not subject Consorcio to personal jurisdiction, proper jurisdiction would exist under Fed.R.Civ.P. 4(k)(2), the federal long-arm statute. A district court may exercise jurisdiction over a foreign party under Rule 4(k)(2) if (1) the claim at issue "aris[es] under federal law"; (2) the defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state"; and (3) the exercise of jurisdiction "is consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2). A petition to confirm an award under the Convention satisfies the "arising under federal law" requirement. 9 U.S.C. § 203. Because the Court discusses this issue under an "even if" pretense, it will assume *arguendo* for the purposes of the second prong that Consorcio is not subject to personal jurisdiction under Florida law. In addition, nothing in the record suggests that it would be subject to the jurisdiction of courts of any other state. In order to satisfy the third prong, the Court examines whether due process requirements of the Fifth Amendment are met. Consorcio's contacts with the nation as a whole must be:

> (1) either related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum; and (3) must be such that it should reasonably have anticipated being haled into court there.

*Assoc. Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir.1999).

This case derives from an arbitration occurring in Miami, by agreement of the parties, in which Consorcio actively participated. Therefore, it is difficult for the Court to envision how conferring personal jurisdiction over Consorcio would violate due process. First, Consorcio's contacts with the United States, namely its participation in the arbitration, are directly related to Four Seasons' petition to confirm the award. Second, Consorcio extensively presented its case to the Miami arbitral forum, as set forth in the Agreements. Third, considering the litigious and contentious nature of the parties' relationship concerning the arbitration, Consorcio had every reason to anticipate proceedings in this Court. Finally, finding personal jurisdiction over Consorcio on the basis of its agreement to arbitrate in the United States and its participation in that arbitration is well within the parameters of due process, as federal common law and the majority of states, with Florida being an exception, stipulate that personal jurisdiction is conferred in a forum where a party agrees to a clause selecting that forum as the site in which to resolve its disputes. *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 918 (11th Cir.1989) ("This aspect of federal common law, favoring the enforcement of conferral of personal jurisdiction clauses, differs sharply from Florida law."); *Slaihem v. Sea Tow Bah. Ltd.*, 148 F.Supp.2d 1343, 1347 (S.D.Fla.2001) (noting that finding personal jurisdiction on basis of forum-selection clause follows federal law and does not violate due process); *see also Johns*, 132 F.Supp.2d at 1029. Personal jurisdiction over Consorcio therefore exists under Rule 4(k)(2).

■ Regarding venue, Consorcio posits that because the disputes involve Venezuelan law and issues already decided by the Venezuelan courts, venue does not lie in this Court. However, the Convention's implementing statute clearly indicates that venue is proper in this Court. "An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court ... for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204. Moreover, the Tribunal in Miami decided the same issues that Consorcio now insists require review by Venezuelan courts. Again, Consorcio cannot avoid the parties' agreement to arbitrate in Miami and nullify their participation in and results of that arbitration by asserting that this Court, located in Miami, is an improper venue.

### CONCLUSION

UPON CONSIDERATION of the Petition to Confirm and Enforce Arbitral Award (DE # 1), the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Four Seasons' Petition to Confirm and Enforce Arbitral Award (DE # 1) is GRANTED. The Partial Award issued by the International Centre for Dispute Resolution on October 10, 2002 is CONFIRMED. The award partially granted Four Seasons' application for provisional relief, enjoining Consorcio from reintroducing, submitting or otherwise maintaining claims in the Venezuelan courts arising out of the Agreements. Award at 21. Consorcio, however, somehow misconstrued this portion of the award to mean the exact opposite— that it was empowered to subsequently file suit relating to the Agreements in Venezuelan court. It is therefore further

ORDERED AND ADJUDGED that Consorcio shall abide by the aforementioned Partial Award and avoid engaging in litigation before the Venezuelan courts as prohibited and detailed by that award. It is further

ORDERED AND ADJUDGED that because confirmation of the Partial Award provides Four Seasons with substantially the same relief requested in their Emergency Motion for a Temporary Restraining Order Enjoining Consorcio from Violating Arbitration Award (DE # 21), that motion (DE # 21) is DENIED AS MOOT. It is further

ORDERED AND ADJUDGED that Four Seasons' motion for Oral Argument (DE # 26) is DENIED. The parties submissions provided the Court with a substantial record upon which to make its determinations. All pending motions not otherwise ruled upon are DENIED AS MOOT. The Clerk of Court is directed to CLOSE this case.